Clyde A. HUTCHINGS,
Appellant-Respondent,

v.

Charles J. MATTHYS,
Appellant-Respondent.

No. KCD 27202.

Missouri Court of Appeals,
Kansas City District.

March 29, 1976.

Rehearing Denied May 3, 1976.

Wayne R. Starr, Jr., Independence, for appellant-respondent Hutchings.

Preston H. Longino, Raytown, for appellant-respondent Matthys.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SHANGLER, Presiding Judge.

The plaintiff had a money judgment on a pleading which alleged that the defendant breached his agreement to bid for the collection of city trash as a joint venturer with the plaintiff. The defendant contended that the plaintiff was his subcontractor, not partner, and also pleaded the bar of the Statute of Frauds. The cause was tried to the court, and both parties appeal from the judgment.

The plaintiff and defendant are trash haulers and each conducts a separate business. The City of Kansas City determined to provide for residential trash collection service and sectioned the area into zones—called routes—for that purpose. In January of 1971, the City invited bids from trash haulers to service these routes for a one year period commencing March 1, 1971. The defendant Matthys decided to bid on Route 4, but did not own sufficient equipment to meet the requirements for that entire zone, so he invited the plaintiff Hutchings to combine with him for the bid.

The parties met to complete the proposal forms supplied by the City, among them a Contractor's Occupation Statement which called for the signatures of the bidders and a description of their business organization.

The plaintiff testified that the parties agreed, as joint venturers, to bid $2.25 per pickup, that plaintiff was to service one-third of the stops, receive one-third of the profits, and contribute one-third of the $2000 bid bond. [Matthys acknowledged that Hutchings had paid $667 on the bond as agreed.] The bid form was signed by both parties, sealed, and submitted to the City by Matthys.

It was the testimony of the plaintiff that when he signed the bid proposal, Matthys wrote next to that signature the legend, *joint member*, and at the same time marked an *x* next to *Joint Venture* and *Missouri Corporation*, two of the classifications listed to identify the business form of the bidder. The bid as received by the City, however, contained the term *joint member (sub.)* next to the Hutchings signature and the *Joint Venture* and *Missouri Corporation* designations were dubbed out and an *x* mark was placed next to the *Individual* category, instead, to describe the business form of the bidder.

The defendant Matthys contended that the writings and insertions on the form were all done at the time of the signatures and properly reflected the agreed role of the plaintiff as a subcontractor.

The court resolved this disputed evidence in favor of the plaintiff. The court found that the parties had made an oral agreement to act as members of a joint venture for the purpose of submitting a bid to the City which, if accepted, would entitle the plaintiff to one-third of the profits; that the plaintiff had not seen the bid form from the date of his signature [January 17, 1971] until the day of trial; that during that interim the bid was in the possession of the defendant, his agents and the City, and had been changed before submission without the consent or approval of the plaintiff. The court also found that the plaintiff agreed to service a designated area which turned out to include 679 units [about one-third of the total]; that plaintiff serviced these stops from March 1, 1971, until they were first reduced in number by the de-

fendant and then discontinued altogether at the end of September of that year.

The court found that plaintiff was entitled to 679 stops for a period of one year, that on the basis of the demonstrated profit per unit, his damage was $5971.61, for which judgment was returned.

■ The defendant makes the contention that the oral agreement of January 17, 1971, between the parties which called for the submission of a bid to the City for services from March 1, 1971, through February 29, 1972, was not capable of performance within a year of making and therefore was unenforceable by the Statute of Frauds. As the trial court recognized, however, the subject matter of the oral agreement was the making of the written bid [which ripened into a separate contract when accepted by the City] and not the doing of the services for which the bid was made. The principle is clearly stated in 37 C.J.S. Statute of Frauds § 64:

> Where parties contract to enter into a contract at some future time, the test of enforceability of the original contract is whether that contract when made is capable of complete performance within a year and not whether subsequent contracts or arrangements made or to be made under or by virtue of it can be completely performed within a year.

A precedent which gives expression to this rule on analogous facts is *Coughlin v. McGrath*, 295 Mass. 499, 4 N.E.2d 319 (1936). The two parties formed an oral partnership to bid a contract with the city of North Adams for the collection of garbage for a period of five years. The defendant contended the agreement was not enforceable because it was an oral agreement not to be performed within a year. The court responded [l. c. 323]:

> But an agreement to enter a contract where the latter contract is to run for longer than a year is not within the statute of frauds. . . . In the case at bar, the terms of the partnership agreement were that a bid should be submitted and that an attempt should be made to obtain the contract. If the attempt had

been made, and the contract had not been obtained, the agreement would have been performed at that time. "It has been repeatedly held that, if an agreement whose performance would otherwise extend beyond a year may be completely performed within a year on the happening of some contingency, it is not within the statute of frauds."

The cross-appeal of the plaintiff Hutchings contends that damages should have been assessed on the basis of 1000 residential collections rather than the 679 found by the trial court. There was evidence that at the time the parties agreed to the bid, they scanned the route, and the plaintiff then agreed to service a general area which, it happened, contained 679 units, somewhat less than one-third of the total stops. The trial court found that the plaintiff acquiesced without objection to this arrangement and denied additional damage. We will not disturb that finding.

The judgment is affirmed.

All concur.